UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DAVID A. SCHWAB,

          Plaintiff,

v.                                     Case No:  2:12-cv-315-FtM-38UAM

THE HUNTINGTON NATIONAL
BANK,

          Defendant.

_____/

## ORDER[1]

This matter comes before the Court on The Huntington National Bank's Dispositive

Motion for Summary Judgment (Doc. #73) filed on September 6, 2013.   Plaintiff's

Response in Opposition to Defendant's Motion for Summary Judgment (Doc. #87) was

filed on September 27, 2013.   Defendant's Reply (Doc. #90) was filed on October 29,

2013.   Thus, the issues raised are now ripe for review.

## BACKGROUND

Plaintiff David A. Schwab brings a four-count Amended Complaint (Doc. #70)

against Defendant the Huntington National Bank for breach of fiduciary duty stemming

from Defendant's actions as Trustee of a Trust – (Count I – failure to timely appoint an

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

advisory committee member; Count II – failure to act in accordance with the trust; Count III – failure to properly administer the Trust; and Count IV – conflict of interest).

## STANDARD

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  An issue is genuine if there is sufficient evidence such that a reasonable jury could return a verdict for either party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 U.S. 2505, 91 L. Ed. 2d 202 (1986).  Similarly, an issue is material if it may affect the outcome of the suit under governing law.  Id.

The moving party bears the burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  In deciding whether the moving party has met this initial burden, the Court must review the record and all reasonable inferences drawn from the record in the light most favorable to the non-moving party.  Whatley v. CNA Ins. Co., 189 F.3d 1310, 1313 (11th Cir. 1999).  Once the Court determines that the moving party has met its burden, the burden shifts and the non-moving party must present specific facts showing that there is a genuine issue for trial that precludes summary judgment.  Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "The evidence presented cannot consist of conclusory allegations, legal conclusions or evidence which would be inadmissible at trial."  Demyan v. Sun Life Assurance Co. of Canada, 148 F. Supp. 2d 1316, 1320 (S.D. Fla. 2001) (citing Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991)).  Failure to show sufficient evidence of any essential element is fatal to the claim and the Court should grant the summary judgment.  Celotex, 477 U.S.

at 322-23. Conversely, if reasonable minds could find a genuine issue of material fact then summary judgment should be denied. Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1532 (11th Cir. 1992). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

In diversity cases, a federal court applies the law of the forum in which it sits. Cambridge Mut. Fire Ins. Co. v. City of Claxton, 720 F.2d 1230, 1232 (11th Cir. 1983); Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938) (a federal court sitting in diversity must apply the substantive law of the state). Thus, in resolving this Motion, the Court looks to Florida law.

## FACTS

The Court finds the following undisputed summary judgment facts: Jerry A. Schwab is the settlor of the Schwab Irrevocable Trust #1 ("Trust"), which is funded with multiple life insurance policies on the joint lives of Jerry A. Schwab and his wife, Donna L. Schwab. (Am. Compl., Doc. #70 at ¶¶7-8, Ex. A). Jerry A. Schwab's progeny—David A. Schwab and his children, and Mary Lynn Hites and her children—are the beneficiaries of the Trust. Id. Huntington is the Trustee of the Trust. Id.

Plaintiff alleges that it was unknown to him at the time of appointment of Defendant as Trustee that Huntington was also a secured creditor of Schwab Industries, Inc. ("SII") pursuant to a loan participation agreement with KeyBank and Bank of America. (Doc. #70, ¶9). SII entered into a Split Dollar Agreement (the "Split Dollar Agreement") with Huntington's predecessor. (OH Huntington Amended Counterclaim, Doc. #73-2 at ¶17;

OH Schwab Second Amended Answer, Doc. #73-3 at ¶17).[2]  The Split Dollar Agreement relates to the payment of premiums on the life insurance policies that fund the Trust (the "Policies").  Id.; Doc. #73-2, Ex. 1.  Pursuant to the Split Dollar Agreement, SII was required to pay the annual premiums on the Policies.  Id.  In exchange for paying the annual premiums, Huntington granted SII a collateral interest in the Policies limited to the total premiums contributed by SII.  Id.

The Trust Agreement provides for a three-member advisory committee, which until July 2011 consisted of David Schwab, Mary Lynn Hites, and Ronald Manse. (Dep. of David Schwab ("Schwab Dep." 13).  In July 2011, Schwab asked Ronald Manse to resign, and Mr. Manse complied. (Schwab Dep. 18-19).  The Trust Agreement provides that, upon resignation of a member of the Advisory Committee, the remaining two members shall appoint a replacement within 60 days; failing that, the Trustee is to appoint a replacement member, although the Trust Agreement provides no deadline for the Trustee to do so.  (Am. Compl. Ex. A ¶5.7).  The two remaining Advisory Committee members did not appoint a replacement, and Huntington appointed a successor Advisory Committee member in March 2013. (Schwab Dep. 28; Dep. of Gail Webster ("Webster Dep.") 71; Webster Aff. ¶3, Doc. #57-5, Ex. A).  Plaintiff alleges in his Response Brief with no citations to the record that David A. Schwab and Mary Lynn Hites had adversarial interests during this time which the Defendant knew about.

With regard to the appointment of a replacement, Huntington began by looking in the Naples community, but the Trustee decided to expand the search to someone out of

---

[2] The Court may consider, through judicial notice, other courts' dockets. See, e.g., O'Neal v. Bank of Am., N.A., No. 8:11-cv-107-T-17-TGW, 2012 U.S. Dist. LEXIS 25046 (M.D. Fla. Feb. 28, 2012) (citing Fed. R. Evid. 201).  Pleadings filed in the United States Bankruptcy Court for the Northern District of Ohio and in the United States District Court for the Northern District of Ohio are referenced by a preceding "OH."

town.  Webster Dep. 72.  Huntington was looking for someone who had an extensive insurance background to serve as the replacement member.  Id. at 73.  Huntington identified a potential successor member, "and at first they agreed to take it.  And when the facts were presented, they chose not to be a[n advisor]."  Id. at 74.  When the potential member turned Huntington down, Huntington began the process all over again.  Id. at 75.  Specifically, the Trustee spoke to counsel and people in the trust department at Huntington.  Id.  But, "nobody seemed to be interested."  Id.  As part of the process of attempting to find a replacement member, Huntington's counsel sent a letter to counsel for Schwab and Ms. Hites, asking them to agree with Huntington's interpretation of the Trust Agreement that the members of the Advisory Committee will be held harmless by the Trust for any loss resulting from an action or decision made by such member in carrying out his or her responsibilities as a member of the Advisory Committee so long as such action or decision is made in good faith and without gross negligence.  (Webster Aff. ¶4, Ex. B).  Huntington received no response from Schwab or Ms. Hites.  Id. at ¶5.  Consequently, one potential appointee declined to accept the position.  Id. at ¶5, Ex. C.

On March 29, 2012, demand was made by Plaintiff upon the Trustee to appoint Michael Bodah, a Naples, Florida based Certified Public Accountant to the vacant Advisory Committee position.  This was refused by the Defendant.  Ms. Hites did not consent to the Mr. Bodah's appointment.  (Schwab Dep. 20; Webster Dep. 86-87).

In 2010, SII filed a voluntary petition for relief in the United States Bankruptcy Court for the Northern District of Ohio under Chapter 11 of the Bankruptcy Code.  In re SII Liquidation Company, Case No. 10-60702.  In the bankruptcy case, KeyBank National Association ("KeyBank") asserted that prior to SII filing for bankruptcy, SII granted to

KeyBank a security interest in the Split Dollar Agreement. (Ex. 2, OH Huntington Amended Counterclaim ¶20). KeyBank purported to exercise its rights as a secured party to terminate the Split Dollar Agreement, and demanded that the Trust repay all premiums that had been paid by SII. As Trustee, Huntington alleges that it refused to do so. (Ex. 8, OH KeyBank Complaint ¶24). Plaintiff alleges that Defendant failed to disclose to the Trust Advisory Board or to the beneficiaries of the Trust that it was a secured creditor of SII at the same time it was acting as Trustee of the Trust. Plaintiff is a beneficiary of the Trust and a member of the Trust's Advisory Committee.

KeyBank commenced an adversary proceeding in the United States Bankruptcy Court for the Northern District of Ohio, alleging that Huntington breached the Split Dollar Agreement by failing to remit to KeyBank the premiums SII had paid and sought, as liquidated damages, and surrender of the policies comprising the corpus of the Trust. KeyBank Nat'l Assoc. v. Huntington Nat'l Bank, Case No. 10-06097 ("Adversary Proceeding"). Huntington answered and asserted a counterclaim seeking a declaratory judgment, and brought a Third Party Complaint against Jerry and Donna Schwab, David Schwab and his children, Mary Lynn Hites and her children, and Ronald Manse. (OH Huntington Amended Counterclaim). David Schwab asserted a counterclaim against Huntington and all three Schwabs asserted cross claims against KeyBank. (OH Schwab Second Amended Answer). The parties later stipulated to the dismissal of Ronald Manse. (Adversary Proceeding Doc. #149). On the Schwabs' motion, the U.S. District Court for the Northern District of Ohio withdrew the bankruptcy reference and proceeded with case number 5:11-MC-00107 (the "District Court Proceeding") (hereinafter, together the District Court Proceeding and the Adversary Proceeding are the "Ohio Litigation").

The parties ultimately reached a settlement agreement that resolved all claims except David Schwab's counterclaim. The Ohio district court granted Huntington's motion for summary judgment on David Schwab's counterclaim on July 12, 2012. (Order at Doc. #73-6). The settlement involved taking loans against various life insurance policies to generate the cash necessary to remit to KeyBank premiums paid by SII. KeyBank did not receive the liquidated damages it sought in its lawsuit as a result of the purported termination of the Split Dollar Agreement. David Schwab appealed the district court's grant of summary judgment to Huntington. On March 4, 2013, the Sixth Circuit affirmed the district court's grant of summary judgment in favor of Huntington. (Doc. #73-7).

## DISCUSSION

Plaintiff alleges in the instant suit that Defendant failed to meet its fiduciary duty as Trustee in numerous ways including failing to disclose conflicts; failing to timely appoint an advisory committee member; serving as Trustee at the same time it was a secured creditor of SII, and failing to recognize and disclose that inherent conflict; and improperly using trust funds for Defendant's own interests.

Defendant filed the instant Motion for Summary Judgment, wherein it argues that the unrebutted evidence of record demonstrates that the Advisory Committee conducted no business that suffered due to the lack of a third member, it was never paralyzed, and no notice of alleged "paralysis" was ever given to Huntington. Defendant also argues that Schwab's own conduct during the then-pending litigation in the Ohio Litigation disproves any notion that Huntington's actions caused any detriment to the Trust. Defendant next argues that Plaintiff admitted that he knew that Huntington was SII's creditor as of January 1, 2010. Thus, he knew of the alleged conflict of interest purportedly resulting from

7

Huntington's position as trustee for the Trust and as a creditor for SII at least one year before he filed his counterclaim in the Ohio Litigation (February, 2011); and therefore, his claims in this case are barred by the doctrines of *res judicata* and waiver.   Finally, Defendant argues that even if Plaintiff could assert his conflict of interest claim in this case, to the extent Huntington engaged in transactions with SII, no conflict of interest resulted under Florida law because Huntington did not have an ownership interest in SII, and because Huntington neither borrowed from the Trust nor lent to it.

In Florida, "[t]he elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." Gracey v. Eaker, 837 So.2d 348, 353 (Fla. 2002).   Damages must flow from the breach.  Miller v. Miller, 2012 WL 1365064 (Fla. 5th DCA 2012).  "A fiduciary owes to its beneficiary the duty to refrain from self-dealing, the duty of loyalty, the overall duty to not take unfair advantage and to act in the best interest of the other party, and the duty to disclose material facts."  Capital Bank v. MVB, Inc., 644 So.2d 515, 520 (Fla. 3d DCA 1994).  The trustee must act as a "prudent" person with "reasonable care, skill, and caution." Fla. Stat. § 736.0804.  The question of whether Defendant breached its fiduciary duty is often looked at as a question of fact for the jury to decide.  Republic Nat. Bank v. Araujo, 697 So.2d 164, 166 (Fla. 3d DCA 1997).

### 1.  Advisory Committee Replacement Member

The Trust Agreement provides for a three-member advisory committee, which until July 2011, consisted of David Schwab, Mary Lynn Hites, and Ronald Manse. Schwab Dep. 13.  In July 2011, Schwab asked Ronald Manse to resign, and Mr. Manse complied. Id. at 18-19.  The Trust Agreement provides that, upon resignation of a member of the

Advisory Committee, the remaining two members shall appoint a replacement within 60 days; failing that, the Trustee is to appoint a replacement member, although the Trust Agreement provides no deadline for the Trustee to do so. (Compl. Ex. A at ¶5.7.) The two remaining Advisory Committee members did not appoint a replacement, even though in March 2012, Schwab requested that Michael Bodah, a Naples, Florida based Certified Public Accountant, be appointed to the position. Mr. Bodah was known to the Defendant as someone who Schwab recommended as a potential replacement, but Defendant did not think he had the credentials for the job. (Webster Dep. 79). Ms. Hites did not consent to the Mr. Bodah's appointment. (Schwab Dep. 20, Webster Dep. 86-87). Defendant was searching for a replacement who had some insurance experience. (Webster Dep. 80). Huntington appointed a successor Advisory Committee member in March 2013, Mr. Siegel, whom they had approached over a year before he accepted. (Schwab Dep. 28; Webster Dep. 71, 74; Webster Aff. ¶3, Ex. A).

Defendant argues that it did not breach its fiduciary duty under Florida law or the Trust Agreement when it did not appoint a replacement member of the Advisory Committee before March 2013, and is therefore entitled to summary judgment on Counts I, II, and III. Firstly, Defendant argues that the Advisory Committee had no operations which Huntington could or did interfere during the time when there were only two Advisory Committee members. In support, Defendant cites the deposition of Plaintiff wherein Schwab clarified that, through the time of Mr. Manse's resignation in July 2011, he has never had any meetings or phone conversations with all three members of the Advisory Committee. Schwab Dep. 13. Schwab also testified that the Advisory Committee, in its entire history, has taken one vote, and that vote did not include Mary Lynn Hites. Id. at

14.  That single vote concerned a request from the Advisory Committee that the Trustee permit SII to borrow two million dollars from the Trust.  Id.  There are no other issues on which Schwab, as an Advisory Committee member, ever requested a vote.  Id. at 15.  In other words, there was no impasse that could have been avoided.  Secondly, Huntington argues that it undertook a diligent search for a voluntary replacement member of the Advisory Committee.

A trustee must act as a "prudent" person with "reasonable care, skill, and caution." Fla. Stat. § 736.0804.  The Trustee's actions in this case regarding a replacement Advisory Committee member are as follows:  In its attempt to find a replacement member for the Advisory Committee, at some point, Huntington began looking.  (Webster Dep. 72).  Huntington began by looking in the Naples community, but the Trustee decided to expand the search to someone out of town.  Id.  Huntington was looking for someone who had an extensive insurance background to serve as the replacement member.  Id. at 73. Huntington identified a potential successor member, "and at first they agreed to take it. And when the facts were presented, they chose not to be a[n advisor]."  Id. at 74.  When the potential member turned Huntington down, Huntington began the process all over again.  Id. at 75. Specifically, the Trustee spoke to counsel and people in the trust department at Huntington.  Id.  But, "nobody seemed to be interested."  Id.  As part of the process of attempting to find a replacement member, Huntington's counsel sent a letter to counsel for Schwab and Ms. Hites, asking them to agree with Huntington's interpretation of the Trust Agreement that the members of the Advisory Committee will be held harmless by the Trust for any loss resulting from an action or decision made by such member in carrying out his or her responsibilities as a member of the Advisory Committee

so long as such action or decision is made in good faith and without gross negligence. (Webster Aff. ¶4, Doc. #57-5, Ex. B.)  Huntington received no response from Schwab or Ms. Hites.  Id. at ¶5.  Consequently, one potential appointee declined to accept the position.  Id. at ¶5, Ex. C.

Mr. Schwab testified at his deposition that failure to have three Advisory Committee members paralyzed the Committee as during this time Mary Lynn would not answer his phone calls or emails.  (Schwab Dep. 28-31).  Specifically, Plaintiff alleges that the Advisory Committee was unable to respond to the lawsuit filed by Huntington as a quorum.  Id. at 30-31.  Further, he testified that Huntington should have borrowed against the policies to satisfy KeyBank's claim, which "would have stopped the litigation from ever happening."  Id. at 58-60.  While Plaintiff did not personally communicate his concerns to Huntington, Id. at 39, Gail Webster, Executive Vice-President – Trust Division – of Huntington, testified that she was aware of Plaintiff's request for Mr. Bodah to become a replacement member in March 2012, and yet another replacement was not put into place for another year.  (Webster Dep. 79).

The Court finds that whether either Party is reasonable in their interpretation of events surrounding the search for a replacement member is a credibility question that the jury may decide at trial as to whether Defendant breached their fiduciary duty in this regard.  For example, Defendant argues that they could not have known of any urgency to appoint a replacement member.  The facts are that Huntington knew that Schwab wanted a replacement member put in place in March 2012, and Defendant also knew that remaining committee members had 60 days to act on their own to appoint a replacement, which they did not.  (Webster Dep. 79).  Whether this constitutes "urgency" such that a

prudent trustee would have a duty to act under Florida law is a question for the jury. Further, Defendant argues that it acted in reasonable reliance on the language of the Trust Agreement in appointing an Advisory Committee member.  Under Florida law, a trustee "who acts in reasonable reliance on the terms of the trust instrument is not liable to a beneficiary for a breach of trust to the extent the breach resulted from the reliance." Fla. Stat. § 736.1009.  Again, whether the Defendant's reliance was reasonable is a question for the jury.

Thus, there is a genuine issue of material fact in this record that is borne out by the record in this case.  Thus, summary judgment is denied with regard to Counts I, II, and III.

### 2.  Conflict of Interest

Count IV of Plaintiff's Amended Complaint alleges a breach of fiduciary claim based upon conflict of interest.  Specifically, Plaintiff alleges that Defendant acted in conscious disregard for its duties as Trustee of the Trust by serving as Trustee at the same time that it was a secured creditor of SII and failing to disclose the conflict to the Advisory Committee or the Trust's beneficiaries.

Defendant argues that this Count is precluded by both claim and issue preclusion under the doctrine of *res judicata*.  *Res judicata* bars the filing of claims "which were raised or could have been raised in an earlier proceeding."  Dinkins v. Leavitt, 315 F. App'x 171, 175 (11th Cir. 2008) (quoting Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1238 (11th Cir. 1999)).  The doctrine of *res judicata* protects a party's adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.

Id.  *Res judicata* bars a subsequent suit where: (1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties are identical in both suits; and (4) the same cause of action must be involved in both cases. Id.  If a case arises out of the same nucleus of operative fact, or is based on the same factual predicate as a former action, then the two cases present the same claim or cause of action for purposes of *res judicata*.  Home Depot U.S.A., Inc. v. U.S. Fire Ins. Co., 299 F. App'x 892, 896 (11th Cir. 2008).  The "essential elements" of issue preclusion are "that the parties and issues be identical, and that the particular matter be fully litigated and determined in a contest which results in a final decision of a court of competent jurisdiction."  Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co., 945 So.2d 1216, 1235 (Fla. 2006) (quotation marks omitted).

Huntington argues in the instant Motion that Schwab's conflict of interest claim could have been raised in the Ohio litigation.[3]  In that case, KeyBank initiated bankruptcy proceedings against Huntington asserting a first priority security interest in premiums paid on certain life insurance policies relating to the Schwab Trust. (Doc. #73-6 at 2).   As trustee, Huntington disputed KeyBank's security interest and sought a third-party declaratory judgment against Jerry and David Schwab clarifying the rights of the parties to the life insurance premiums.  Id.  David Schwab filed a counterclaim against Huntington alleging that it had breached its fiduciary duties as the trustee.  Id.  On July 2, 2012, Huntington and KeyBank settled their dispute over the life insurance premiums, leaving the Ohio district court with David Schwab's counterclaim.  Id.  The Ohio District Court

---

[3] This Court previously addressed a *res judicata* argument raised by the Defendant in a Rule 12(b)(6) Motion to Dismiss (Doc. #33), but at that time, Count IV for conflict of interest was not included in Plaintiff's Complaint.  Plaintiff filed an Amended Complaint which added this Count on July 9, 2013.  (Doc. #70).

ruled in favor of Huntington and dismissed the counterclaim. Id. at 7. Now, Huntington alleges that the Ohio court's dismissal precludes Plaintiffs from re-litigating their breach of duty claim premised on a conflict of interest in this case. The only factor of claim preclusion at issue in this case is the fourth factor – whether the two cases involve the same claim or cause of action. The two claims must arise out of the same transaction or series of transactions and should rely on the same facts or evidence. See Wallis v. Justice Oaks II, Ltd., 898 F.2d 1544, 1551 (11th Cir. 1990); Aquatherm Indus., Inc. v. Fla. Power & Light Co., 84 F.3d 1388, 1394 (11th Cir. 1996).

In his Ohio counterclaim against Huntington, David Schwab alleged five Counts. Counts I and II asserted that Huntington breached its duties of good faith and loyalty by generally failing to appropriately defend the Trust against KeyBank's claims to the life insurance premiums and by failing to inform the beneficiaries of KeyBank's attempts to terminate the Trust. (Doc. #73-3 at pp. 8-9). For example, under both Counts, Schwab alleged that Huntington "fail[ed] to protect and defend the Trust against the claims of KeyBank and filing for declaratory judgment against the Schwabs to extinguish any of their potential rights against [Huntington] that might arise from the outcome of this litigation, [Huntington] breach, and remains in breach of, this duty." (Doc. #73-3 at ¶¶26, 34). Defendant argues that Count IV of Plaintiff's Amended Complaint in this case, which alleges breach of fiduciary claim based upon conflict of interest, is the "same claim by another name" as the breach of fiduciary duty claims asserted by Plaintiff in Counts I and II of the Ohio Litigation.

In this case under Count IV, Plaintiff alleges that Defendant acted in conscious disregard for its duties as Trustee of the Trust by serving as Trustee at the same time that

it was a secured creditor of SII and failing to disclose the conflict to the Advisory Committee or the Trust's beneficiaries.  (Doc. #70 at p. 7).  The Court finds that this Count relies upon a different factual predicate such that *res judicata* does not apply as different evidence may be offered to demonstrate Plaintiff's theory that Defendant breached its duty of loyalty and care to the Plaintiff.[4]

Accordingly, it is now

**ORDERED:**

The Huntington National Bank's Dispositive Motion for Summary Judgment (Doc. #73) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida this 25th day of November, 2013.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record

---

[4] Defendant also argues that the Plaintiff waived his right to bring the conflict of interest claim because he knew about the claim at the time he filed his answer and counterclaim in the Ohio Litigation. It is not apparent from the Court's review of the record in this case that Plaintiff could have raised this conflict of interest issue when he asserted the Ohio counterclaim.